**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| DAVID BERGER, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:04-CV-277 |
| | ) | |
| OHIO TABLE PAD COMPANY, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION**

This case is a patent case involving magnetic table pads. All parties have moved for

partial summary judgment on the Plaintiffs' infringement and declaratory judgment claims.

While the Plaintiffs claim that two of the Defendants' table pad designs infringe upon their

patent, the motions for partial summary judgment only pertain to the second, later design. The

question presented by this case is what is a magnetically receptive structure?

**A.      Summary Judgment Standard**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be

granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show

that there is no genuine issue as to any material fact and that the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(c). "In other words, the record must reveal that no

reasonable jury could find for the nonmoving party." *Dempsey v. Atchison, Topeka, & Santa Fe*

*Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). After adequate

time for discovery, summary judgment must be given against a party "who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party may, if it chooses, support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982); *Faulkner v. Baldwin Piano & Organ Co.*, 561 F.2d 677, 683 (7th Cir. 1977).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Federal Rule of Civil Procedure 56(e) establishes that the adverse party's response, by affidavits or as otherwise provided in Rule 56, must "set out specific facts showing a genuine issue for trial."

Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 248–50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992). Only material facts will preclude summary judgment; irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Anderson*, 477 U.S. at 248–49. If there is no genuine issue of material fact, the only question is whether the moving party is entitled to judgment as a matter of law. *Miranda v. Wis. Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994); *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50; *Doe*, 42 F.3d at 443.

**B.      Facts and Procedural Background**

**(1)      *The Plaintiffs' '577 Patent***

On January 31, 2000, David Berger filed a patent application for a magnetically latching system for protective tabletop pads and was assigned U.S. Patent Application Number

09/494,164. There were no objections or modifications to the application, and on December 26,

2000, Patent Number 6,165,577 (the '577 patent) was issued to Berger. The '577 patent includes

2 independent claims, claims 1 and 19, and 17 dependent claims. The dependent claims are

dependent on claim 1, which is at the center of the dispute. Claim 1 states:

> 1. A tabletop protective pad section for resting on a top surface of a table, the pad section comprising:

>> a base member having a first face for facing in an upward direction and a second face for facing in a downward direction, the first and second faces being oriented substantially parallel to each other, each of the first and second faces having a perimeter, the base member having a perimeter edge face extending between the perimeters of the first and second faces, a pair of side portions of the perimeter edge face being oriented generally parallel to each other on opposite sides of the base member;

>> a magnetically-active structure mounted on the first side portion of the perimeter edge face of the base member; and

>> a magnetically receptive structure mounted on the second side portion of the perimeter edge face;

>> wherein the magnetically-active structure of the first side portion of a first one of the pad sections is magnetically couplable to the magnetically-receptive structure of the second side portion of a second one of the pad sections for removably holding the first and second pad sections in an adjacent condition.

(Patent '577 at 8, DE 48-2.) The following figures are reproduced from the '577 patent to

illustrate the claimed invention.





(Patent '577 Drawing Sheets, DE 48-2.)

**(2)    *The Defendants' '116 Patent***

In 2002, the Defendants started to manufacture and sell table pads with magnetic latching. The first design consisted of a magnet being attracted to an opposed steel bar to hold the table pads in place. The second design, which the Defendants incorporated into the manufacture of their table pads on January 23, 2003, and continue to use today, consists of magnets of opposite polarity, or a magnet and a steel bar configuration, to hold the table pads in place. Only the second design is at issue at this summary judgment stage.

On October 9, 2003, Defendants Christopher Krauser and Gary Heal submitted an application to obtain a patent for the Defendants' second design. The application included 20 claims. The examining attorney rejected claims 1–2, 4–6, 12–14, and 16–18 as having been anticipated by the '577 patent. The remaining claims depended on the rejected claims, so the patent application was denied. The Defendants resubmitted the claims that were not rejected as independent claims, they inserted some of the rejected claims into the new independent claims, and the Patent Office accepted the application, issuing it as Patent Number 6,919,116 (the '116 patent), on July 19, 2005.

The '116 patent describes a "table pad coupling system" consisting of table pads that have steel bars or magnets of a matching polarity. The '116 patent consists of nine claims. Claim 1 describes a table pad coupling system of three table pads. The first table pad contains magnets on opposing sides, with all the magnets having the same polarity. The first table pad sits in

between the second and third table pads. The second table pad has ferrous[1] members on its sides, and it sits adjacent to the first table pad. The third table pad sits on the other side of the first table pad and has on its sides magnets of the opposite polarity to the first table pad.

Claim 2 describes a table pad coupling system similar to claim 1, except that there is no table pad having a ferrous member. A table pad described in claim 2 has magnets on opposing sides of the same polarity, and it is positioned next to a table pad having magnets of opposing polarity.

Claim 3 is dependent on claim 2, and it describes an arrangement of a number of the table pads described in claim 2 wherein each table pad is positioned so that its magnets are of the opposite polarity of the magnets of the table pad adjacent to it.

 Claim 4 describes a table pad coupling system in which the first table pad has two magnets of the same polarity that are on opposing sides of the table pad. The first table pad has two more magnets having a polarity opposite to the other two magnets on opposing sides of the table pad. The table pad has at least four magnets. Each side of the table pad has at least two magnets, and the two magnets on each side have opposing polarities. The second table pad sits adjacent to the first, but the claim does not describe the second table pad as having either a ferrous member or a magnet, so it does not appear to be magnetically couplable to the first table pad.

Claim 5 is dependent on claim 4, and it describes the second table pad as being similar to the first, so that the second table pad contains a magnet having the opposite polarity of the adjacent magnet in the first pad.

---

[1] For clarity, ferrous means "[o]f, relating to, or containing iron." Webster's II, New Riverside Univ. Dictionary 472 (1994).

6

Claim 6 is dependent on claim 5 and claim 4, and it describes the second table pad of claim 5 as having an additional magnet with the opposite polarity of the adjacent magnet in the first pad. The second table pad in claim 6 is the opposite of the first table pad in claim 4, that is, it has the same positioning of magnets, except its magnets have the opposite polarities making the magnets in the second table pad magnetically couplable with the magnets in the first table pad.

Claim 7 describes a method of arranging a series of table pads, where the first table pad has magnets of one polarity on its sides, the second table pad has ferrous members on its sides, and the third table pad has on its sides magnets having a polarity opposite to that of the magnets on the first table pad. The pads are to be positioned so that the second and third pad are adjacent to the first pad.

Claim 8 describes a method of arranging a series of table pads where there are two types of table pads. The first table pad contains magnets having a polarity opposite to that of the magnets contained in the second table pad.

Claim 9 is dependent on claim 8, and it describes arranging a number of table pads of the type described in claim 8 so that the table pads are positioned only next to table pads of the other type. For example, claim 9 includes the following arrangement: type 1, type 2, type 1, type 2. Claim 9 excludes arranging the table pads such that two table pads of the same type sit adjacent to each other.

The following figures are reproduced from the '116 patent to illustrate the claimed invention.



('116 Patent Drawing Sheets, DE 66-9.)

**(3)**   ***Procedural Background***

On July 19, 2004, the Plaintiffs David Berger and Factory Direct Table Pad Company filed their initial complaint against the Defendants, the Ohio Table Pad Company and the Ohio Table Pad Company of Indiana. The complaint alleged that the Defendants infringed the '577 patent by selling magnetically latching table pads.

An amended complaint was filed on August 18, 2005. The amended complaint added Defendants Christopher Krauser and Gary Heal after they were issued their '116 patent. On August 18, 2005, Plaintiff trustee Philip Boberschmidt was substituted as a party for Factory Direct Table Pad Company, as Factory Direct Table Pad Company had filed for bankruptcy.

The Plaintiffs' complaint states two causes of action. First, the Plaintiffs claim the Defendants infringed on their '577 patent by selling magnetically latching table pads. The Plaintiff seeks treble damages, attorney's fees, and an injunction stopping the Defendants' infringement. The second count in the amended complaint asks for a declaratory judgment invalidating the Defendants' '116 patent.

The Defendants moved for partial summary judgment on July 13, 2005, on the issue of whether the Defendants' second table pad design infringes upon the Plaintiffs' '577 patent. The Plaintiffs filed a cross-motion for partial summary judgment on the same issue on September 7, 2005. The Plaintiffs also moved for summary judgment on the issue of whether the Defendants' '116 Patent is invalid.

On March 15, 2007, the Court ordered the parties to further brief whether the Court has jurisdiction over the subject matter of this suit. The Plaintiffs moved for leave to file a second amended complaint on May 11, 2007, to ensure that the record is clear that the Court does in fact have jurisdiction and to add a claim involving a more recent patent issued to the Defendants.

**(4)**     *The Plaintiffs' Request to the Patent Office to Reconsider the '116 Patent*

On October 28, 2005, the Plaintiffs requested that the Patent Office reexamine the '116 patent. On November 16, 2005, the Patent Office rejected the request for reexamination. The

9

Patent Office stated that reexamination was not granted because there were no substantial new questions of patentability presented. The examiner concluded that "Berger '577 describes a parallelpiped tabletop protective pad with opposed sides having either a magnetic material or an iron material." (Order Den. Req. for Reexamination at 3, DE 79-2.)


**(5)**     *The Defendants' '693 Patent*

On April 3, 2006, the Defendants filed a supplement to their briefing. The supplement notified the Court of a second patent, Patent No. US 7,018,693 B1 ("the '693 patent"), issued to the Defendants for a table pad coupling system, which describes various other configurations of magnets and table pads. The Plaintiffs' Motion for Leave to File Second Amended Complaint (DE 90) seeks to add claims for infringement and declaratory judgment on the '693 patent as well.


**C.**     **Claim Construction**

**(1)**     *Patent Claim Interpretation Standard*

To determine whether an invention infringes on a certain patent requires determining the scope of that patent. "The language of the claim defines the scope of the protected invention." *Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 619 (Fed. Cir. 1995). "[A] patent includes one or more 'claims,' which 'particularly poin[t] out and distinctly clai[m] the subject matter which the applicant regards as his invention.'" *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 373 (1996) (quoting 35 U.S.C. § 112).

"Claim interpretation is the process of giving proper meaning to the claim language."

*Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed. Cir. 1997). The language used in a claim "frames and ultimately resolves all issues of claim interpretation." *Id.* Disputed terms in a claim are interpreted in light of the intrinsic evidence and, if necessary, extrinsic evidence. *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861–62 (Fed. Cir. 2004).

Intrinsic evidence consists of the contents of the patent—including the specification section and drawings—and the prosecution history of the patent. *Teleflex, Inc. v. Ficosa N. America Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). "The intrinsic evidence may provide context and clarification about the meaning of claim terms. 'Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language.'" *Id.* at 1325 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "In the absence of an express intent to impart a novel meaning to claim terms, an inventor's claim terms take on their ordinary meaning." *Id.* There is a heavy presumption that a claim term carries its ordinary and customary meaning from the standpoint of a person of ordinary skill in the relevant art. *Id.* However, "a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history." *Vitronics Corp*, 90 F.3d at 1582.

The specification section of the patent "contains a written description of the invention which must be clear and complete enough to enable those of ordinary skill in the art to make and use it." *Id.* at 1582. "[T]he specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id.* However, the specific embodiments of an invention described in the specification do not limit the scope of the language used in the claims, unless the specification makes it clear that it is

coextensive with the claims. *JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed. Cir. 2005).

"Extrinsic evidence consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995). "The court may, in its discretion, receive extrinsic evidence in order 'to aid the court in coming to a correct conclusion' as to the 'true meaning of the language employed' in the patent." *Id.* (quoting *Seymour v. Osborne*, 78 U.S. (11 Wall.) 516, 546 (1871)). However, extrinsic evidence cannot contradict or change the meaning of the terms of the claims. *On-Line Techs, Inc. v. Bodenseewerk Perkin-Elmer GMBH*, 386 F.3d 1133, 1139 (Fed. Cir. 2004).


**(2)**     ***Interpretation of "Magnetically-Receptive Structure"***

The Court "focuses at the outset on how the patentee used the claim term in the claims, specification, and prosecution history . . . ." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005).

(a)     *Claims*

The Court begins with the language used in the claim, as that defines the scope of the patent. Claim 1 describes a table pad comprising "a magnetically-active structure mounted on the first side portion of the perimeter edge of the base member" and "a magnetically-receptive structure mounted on the second side portion of the perimeter edge face."(Patent '577 at 8, DE 48-2.) Both parties agree that a magnetically-active structure is a structure that has a magnetic field. (Pl. Summ. J. Br. at 11, DE 64 ("Plaintiffs submit that the term 'magnetically-active

structure' is properly defined as any material from which magnetic forces emanate."); Def. Summ. J. Br. at 12, DE 49 ("Defendant respectfully submits that the term 'magnetically-active structure' is properly defined as a magnet emanating a magnetic field.").)

At issue is what constitutes a magnetically-receptive structure. The Plaintiffs submit that a magnetically-receptive structure "is properly defined as any material that is attracted to a magnetic force." (Pl. Summ. J. Br. at 11, DE 64.) The Defendants submit that a magnetically-receptive structure is "properly defined as a ferrous piece not originating a magnetic field." (Def. Summ. J. Br. at 8, DE 49.)

Claim 1 assists in this determination by describing how the magnetically-active and magnetically-receptive structures interact: "the magnetically-active structure of the first side portion of a first one of the pad sections is magnetically couplable to the magnetically-receptive structure of the second side portion of a second one of the pad sections for removably holding the first and second pad sections in an adjacent condition." (Patent '577 at 8, DE 48-2.) The requirement that the pads be magnetically couplable has the purpose of "removably holding" the pads adjacent to each other. (*Id.*) This section of the claim limits what can qualify as a magnetically-receptive structure by requiring that it be magnetically couplable to the magnetically-active structure. The magnetically-receptive structure must be attracted sufficiently to the magnetically-active structure so that the attraction holds the two pad sections in an adjacent condition, but also such that the pads can be removed.

It is apparent from claim 1 that if a structure does not consist of a material that is magnetically couplable to a magnetically active structure, it is not magnetically-receptive. The converse is also true: if a structure is magnetically couplable to a magnetically-active structure, it

13

comes within the definition of "magnetically-receptive," according to this Court's view of the ordinary and customary meaning of the words used in claim 1. There is no evidence that the words or descriptions used would be understood differently by a person of ordinary skill in the art of using magnets to hold objects in place.

Applying a plain understanding of the language and terms used in claim 1 to the question before the Court—whether a structure made of a material having a magnetic field can be a magnetically-receptive structure—requires determining whether a structure having a magnetic field is couplable to a magnetically-active structure. The answer is "yes" if the structure has a magnetic field facing outward opposite to the pole facing outward from the magnetically active structure, and "no" if the structure has an outward-facing, magnetic field of the same pole.

The other claims support this reading and do not contradict the plain meaning of claim 1 in any way that this Court can see. Claims 2–18 all depend on claim 1 and describe variations of the magnetic table pads in claim 1. Claim 10 is for a pad section described in claim 1, with an additional requirement that it include a "magnetically-receptive member comprising iron." (Patent '577, DE 48-2.) The inclusion of the requirement that a magnetically-receptive member be comprised of iron suggests that "magnetically-receptive" encompasses more than iron materials, otherwise the limitation would be unnecessary.

The Defendants do not attempt to argue that their definition of "magnetically receptive"—a ferrous piece not originating a magnetic field—is the ordinary and accustomed meaning of the term. The Defendants' only argument from the '577 patent relates to claims 10 and 19, which incorporate language from claim 10. The problem with claim 10, according to the Defendants, is that it states "the magnetically receptive structure comprises a magnetically-active

14

member . . . ," ('577 Patent 7–8, DE 48-2), and that the claim is improperly drafted and that the claim is not described by the specification. The Court agrees that claim 10 contains an error, and that it only makes sense in light of the specification if the claim is construed so that "magnetically-receptive member" replaces "magnetically-active member." Claim 10 would then read: "[T]he magnetically-receptive structure comprises a *magnetically-receptive member*, *the magnetically-receptive member* being positioned adjacent to the second strip of the perimeter edge face, the magnetically-receptive member comprising an L-shaped member . . . ."

However, the Plaintiffs are correct to note that the Defendants' argument concerning claim 10 does not support its interpretation of "magnetically-receptive," and is beside the point. Claim 10, construed as argued by the Defendants, does not in any way support the Defendants' limitation on what may be considered magnetically receptive. As earlier noted, claim 10 describes a table pad having a magnetically-receptive member of iron, a limitation that is not present in Claim 1. The Court sees no basis in the language or structure of the patent's claims for limiting the term "magnetically-receptive" to exclude any material that emanates a magnetic field, as argued by the Defendants.

(b)    *Specification*

The specification describes an embodiment of the invention that uses iron material for the magnetically receptive structure. It states, "The magnetically-receptive member preferably comprises an iron material." ('577 Patent at 6, DE 48-2.) The Defendants argue that because the only example of a magnetically-receptive structure identified in the written specification is made from iron, which does not have a magnetic field, and because a magnetically-receptive structure

15

is not described as having any alternative configuration, the specification only supports the Defendants' interpretation of "magnetically receptive."

The Federal Circuit wrote in *Phillips* that "we have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Phillips*, 415 F.3d at 1323. The court recognized that "the distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim can be a difficult one to apply in practice." *Id.* To avoid incorrectly importing limitations from the specification into the claim, a court must focus "on understanding how a person of ordinary skill in the art would understand the claim terms." *Id.*

A person of ordinary skill in the art who read the specification would understand that it is describing one embodiment of the invention, and that many other possible configurations and materials could be used to hold table pads together using magnetic forces. The specification is explicit:

> [I]t is to be realized that the optimum dimensional relationships for the parts of the invention, to include variations in size, materials, shape, form, function and manner of operation, assembly and use, are deemed readily apparent and obvious to one skilled in the art, and all equivalent relationships to those illustrated in the drawings and described in the specification are intended to be encompassed by the present invention.
> Therefore, the foregoing is considered as illustrative only of the principles of the invention. Further, since numerous modifications and changes will readily occur to those skilled in the art, it is not desired to limit the invention to the exact construction and operation shown and described, and accordingly, all suitable modifications and equivalents may be resorted to, falling within the scope of the invention.

('577 Patent at 7–8, DE 48-2.) The specification notes that different materials may be used, so it is consistent with the specification for one to use magnets in the magnetically-receptive structure. The fact that the embodiment describes a particular material to be used in the

16

magnetically-receptive structure, iron not having a magnetic field, does not limit the invention to table pads using iron magnetically-receptive structures. *Phillips*, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.")

The specification also recognizes that there are different "dimensional relationships" for the parts of the invention, depending on what variations are made to the design. In other words, changing the size, materials, shapes, or other elements of the table pads will result in different configurations for the parts of the invention, including the magnetically-active and magnetically-receptive structures. This allows for the fact that the polarities of the magnets in the magnetically-active structure and the magnetically-receptive structure would have to be coordinated so that structures are magnetically couplable.

The specification makes it clear that the specification was not intended to limit the scope of the claims. There are some cases where it is "hard to determine whether a person of skill in the art would understand the embodiments to define the outer limits of the claim term or merely to be exemplary in nature," *Phillips*, 415 F.3d at 1323, but here, the specification itself states that the embodiment in the specification is "illustrative only of the principles of the invention" and not intended to limit the invention to the embodiment in the specification, ('577 Patent at 7–8, DE 48-2.)

There is nothing in the specification suggesting "magnetically-receptive" has a special meaning, and there is no limitation on what may qualify as "magnetically-receptive" beyond the limitation already contained in claim 1. The specification makes clear the purpose of the magnetically-receptive structure:

the magnetically receptive structure 50 of the first side portion of a first one 12 of the pad sections is magnetically attracted to the magnetically-active structure 30 of the second side portion of a second one 14 of the pad sections for removably magnetically coupling the first and second pad section in an adjacent condition.

('577 Patent at 7–8, DE 48-2.) A structure is magnetically-receptive if it can be attracted to the magnetic field of the magnetically-active structure on the adjacent table pad, and is magnetically couplable to it, so that the table pads are held in place.

The Defendants also argue that a formula referenced by the specification for determining the strength of the magnetic force necessary to hold the pads together applies only to a magnet attracted to iron that does not have its own magnetic field, and so, the specification describes only how to make a magnetic table pad using iron as a magnetically-receptive structure, and the Plaintiff does not dispute this characterization. The specification states: "it can be shown that the attractive force between the magnetically active member and the magnetically receptive member is given by Force = $(B^2S)/1.73$ lb. where B is in kilogauss (kG) and S is in square inches." (*Id.* at 7.)

The Court assumes the Defendants are correct in stating the formula applies only to a magnet attracted to a non-magnetic ferrous object, though the reference cited does not clearly state that.  However, the Court disagrees that the fact that the embodiment described in the specification uses iron for its magnetically-receptive material limits the scope of what may qualify as a magnetically-receptive structure. When the specification states that the formula applies to "the magnetically receptive member," it is referring to the magnetically receptive member described in the specification, that is, the magnetically receptive member made of iron and not to magnetically receptive objects generally.

With respect to prosecution history, the last type of intrinsic evidence, there is nothing

relevant in the history to consider.

(c)     *Extrinsic Evidence*

<u>i.</u>     <u>Prior Art</u>

The Defendants argue that the extrinsic evidence supports their interpretation. They point to patents using the term "magnetically-receptive" and argue none of those patents use the term to refer to other magnets.

The patents presented by the Defendants are not sufficient to show that the term "magnetically receptive" has a particular meaning in the pertinent field. The term "magnetically receptive" appears only infrequently in the patents. The phrase is not used in a context suggesting it has a particular, uniform meaning.

The first patent is for a promotional information card backed by magnetic strips to be placed on a "magnetic receptive substance," such as a refrigerator or file cabinet. (Patent No. 6,153,280, DE 48-7.)  The magnetic receptive substance is not limited to substances containing iron and could include substances having a magnetic field. A refrigerator and file cabinet are given as examples of magnetic receptive substances on which the card could be placed, but nothing suggests the card could not also be placed on a substance having a magnetic field.

The second patent is for a magnetic game piece to be thrown and stuck to a magnetically attractive surface.  (Patent No. 6,105,965, DE 48-7.)  The patent uses the phrase "magnetically attractive substances" interchangeably with the phrase "magnetically receptive surface" to refer to substances magnets attract. The patent does not limit what may constitute a magnetically attractive surface, and refers to a refrigerator door as an example. Nothing in the patent suggests

a second magnet could not be used as the magnetically attractive substance.

The third patent is for a mold package to be mounted on a magnet to be attractive to a "magnet receiving metal surface." The phrase "magnet receiving metal surface" is used consistently throughout the patent's specification. The claim in the patent does not use that phrase; it uses the term "ferromagnetic."

The fourth patent is for a sliding door apparatus and describes the edge or frame as having a magnetically receptive surface and the other having a magnetic sealing strip. The magnetically receptive surface is stated to be preferably steel or other magnetically attracted material.

A review of these patents shows there is no consistent definition for the phrase "magnetically receptive." The phrase is often used to refer to metal objects that magnets are attracted to, such as refrigerator doors. That does not suggest the phrase excludes materials having a magnetic field.


ii.     Dictionaries

The parties appear to agree that the scientific and technical dictionaries do not include a definition for a "magnetically-active" structure or member, or for a "magnetically-receptive" structure or member. The Defendants argue that the McGraw-Hill Dictionary of Scientific and Technical Terms, Fifth Edition, supports their definition of a magnetically-active structure. The parties agree on the definition of "magnetically active," however, so dictionaries are of no help in this case.

iii.    The Defendants' '116 Patent History

The Defendants point to the history of their own '116 patent as extrinsic evidence for interpreting the Plaintiffs' '577 patent. In determining whether to grant the '116 patent, the Patent Office considered the scope of the claims in the '577 patent. The examiner determined that the magnetically receptive materials described in the '557 patent did not include materials having a magnetic field.

The Court is aware of no precedent allowing the consideration of the subsequent interpretation of a patent by the Patent Office when construing the claims of that patent. Even so, the '116 examining attorney originally rejected the patent application as being anticipated by the '577 patent, so the '116 patent history is a neutral factor at best.

(d)    *Defendants' Remaining Arguments*

The Defendants argue that to construe "magnetically-receptive" to include a magnetically-active material would make the claim indefinite, and therefore invalid. The Defendants cite a few cases and materials which provide a very cursory discussion of the issue of "double inclusion." No case is provided that demonstrates, through analogy or otherwise, that claim 1 is too indefinite. Claim 1 adequately states a "magnetically-active structure" that has a magnetic field and a "magnetically-receptive structure" that is attracted to and couplable to the "magnetically-active structure."

"The definiteness requirement . . . does not compel absolute clarity. Only claims 'not amenable to construction' or 'insolubly ambiguous' are indefinite." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) (citing *Novo Indus., L.P. v. Micro Molds*

*Corp.*, 350 F.3d 1348, 1353 (Fed. Cir. 2003)). "Thus, the definiteness of claims terms depends

on whether those terms can be given any reasonable meaning." The Court finds that the

Plaintiffs' proffered definition of "magnetically-receptive structure" is sufficiently definite.

The Defendants also assert that the parties have presented the Court with an equal choice

between a broader and a narrower meaning of a claim. As such, the Defendants cite *Athletic*

*Alternatives, Inc. v. Prince Mfg., Inc.* for the proposition that because there is an enabling

disclosure that indicates that the Plaintiffs are at least entitled to a claim having the narrower

meaning, the notice function of the claim is best served by adopting the narrower meaning. 73

F.3d 1573, 1581 (Fed. Cir. 1996). The problem with this argument is that it assumes that the

proffered definitions for a magnetically-receptive structure are indeed equal. They are not. The

intrinsic evidence of the '577 patent militates strongly in favor of the Plaintiffs' proposed

construction. The available extrinsic evidence does not undermine the Plaintiffs' position.

Because the proposed constructions are not equal, the principle in *Athletic Alternatives* to which

the Defendants point is not relevant in this case.

Considering all the evidence, both intrinsic and extrinsic, the Court finds that a structure

is "magnetically-receptive" if it is attracted to the magnetic field of the magnetically-active

structure on the adjacent table pad, and is magnetically couplable to it, so that the table pads are

held in place.

**D.      Infringement**

An infringement analysis is a two step process. "First the court determines the scope and

meaning of the patent claims asserted, and then the properly construed claims are compared to

the allegedly infringing device." *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (citations omitted). "To prove infringement, the patentee must show that the accused device meets each claim limitation, either literally or under the doctrine of equivalents." *Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.*, 347 F.3d 1314, 1324 (Fed. Cir. 2003) (citing *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999)). "Where the parties do not dispute any relevant facts regarding the accused product, but disagree over possible claim interpretations, the question of literal infringement collapses into one of claim construction and is amenable to summary judgment." *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999) (ellipses, brackets, and citations omitted).

**(1)      *Literal Infringement Analysis***

"Literal infringement requires that each and every claim limitation be present in the accused product." The Court has construed "magnetically-receptive structure" to mean a structure that is attracted to the magnetic field of the magnetically-active structure on the adjacent table pad and is magnetically couplable to it, such that the table pads are held in place. Claim 1 of the '577 patent, which is at the center of the dispute, states:

> 1. A tabletop protective pad section for resting on a top surface of a table, the pad section comprising:
>
>> a base member having a first face for facing in an upward direction and a second face for facing in a downward direction, the first and second faces being oriented substantially parallel to each other, each of the first and second faces having a perimeter, the base member having a perimeter edge face extending between the perimeters of the first and second faces, a pair of side portions of the perimeter edge face being oriented generally parallel to each other on opposite sides of the base member;
>>
>> a magnetically-active structure mounted on the first side portion of the perimeter

23

>       edge face of the base member; and
>
>   a magnetically receptive structure mounted on the second side portion of the
>       perimeter edge face;
>
>   wherein the magnetically-active structure of the first side portion of a first one of
>       the pad sections is magnetically couplable to the magnetically-receptive
>       structure of the second side portion of a second one of the pad sections for
>       removably holding the first and second pad sections in an adjacent
>       condition.

(Patent '577 at 8, DE 48-2.) Claims 2–18 refer back to and depend on independent claim 1.

The Defendants acknowledge that their second table pad design (which is reflected in the '116 patent) contains magnetically active structures. (Def. Summ. J. Br. at 30, DE 49) ("[T]he OTP Design Two shown in Exhibit D includes separate table pads, with each pad having only magnets along opposite sides of the pad, or each pad having only ferrous pieces along one or opposite sides of a pad.") They dispute that their design consists of both a magnetically-active structure and a magnetically-receptive structure on opposite sides of a table pad. In light of the Court's construction of "magnetically-receptive structure," this argument must fail.

While the Defendants are correct that "[n]o single table pad includes a mixture of magnets and ferrous pieces" in their design, each table pad is adjacent to another table pad that contains a substance that is attracted to the magnetic field of the magnetically-active structure and couplable to it. All of the Defendants' table pads are either held together by opposing magnets of matching polarity, or by a magnet emanating a magnetic field and a steel insert that is attracted to the magnetic field but does not emanate a magnetic field itself. Either way, the configurations are covered by claim 1 in the '577 patent because the Defendants' design includes, (1) a magnetically-active structure mounted on the first side portion of the perimeter edge face of the base member, (2) a magnetically-receptive structure mounted on the second side

24

portion of the perimeter edge face, and (3) the magnetically-active and magnetically-receptive structures are couplable for removably holding the first and second pad sections in an adjacent condition. The Court therefore finds that Defendants' second design, reflected in the '116 patent, literally infringes the '577 patent.

**(2)     *Infringement Under the Doctrine of Equivalents***

"[A] product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997). Infringement under the doctrine of equivalents means that the difference between the claimed invention and the accused product is insubstantial. *See Stumbo v. Eastman Outdoors, Inc.*, — F.3d  —, Nos. 2007-1186, 2007-1205, 2007 WL 4180137, at *4 (Fed. Cir. Nov. 28, 2007). One way of establishing infringement under the doctrine of equivalents "is by showing on a limitation by limitation basis that the accused product performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product." *Id.* (citing *Warner-Jenkinson*, 520 U.S. at 39–40). This method is particularly appropriate for devices such as the table pads at issue in this case. *Id.* ("The function-way-result test is particularly suitable for analyzing the equivalence of mechanical devices . . . .")

The Court agrees with the Plaintiffs' doctrine of equivalents analysis. Both table pad designs, the Plaintiffs' and the Defendants' second design, perform the same function. Namely, they both couple table pads together in a secure but removable fashion. ('116 Patent at 1, DE 66-

9 ("system and method to couple table pads together"); '577 Patent at 1 ("magnetic latching system for protective tabletop pads).) Rather than quarrel with the coupling of table pads as the substantial function of both inventions, the Defendants emphasize that their invention allows for a great variety of alignments in table pads. While this may be true, the substantial function of both inventions remains to utilize magnetic force to couple table pads together. The Court finds that the two devices have substantially the same function.

Both inventions serve their substantial function in substantially the same way. As this Court has construed the meaning of magnetically-active and magnetically receptive, both inventions have at least one table pad attracted to another through the use of magnetically-active and magnetically-receptive structures. The Defendants characterize the '577 patent device as providing a magnetically-active structure along one edge and a magnetically-receptive structure along an opposite edge of a table pad. They characterize their own device as orienting and affixing magnets with the same outward facing polarity along at least one side of the northern magnetic pole table pad and the southern magnetic pole table pad. The Defendants' characterizations confirm that both devices utilize magnetically-active and magnetically-receptive structures to couple table pads together. The Court finds that both inventions perform their functions in substantially the same way.

Serving substantially the same function in substantially the same way, the two inventions achieve substantially the same results. Both inventions yield a system of table pads that are coupled together to protect a table surface and are conveniently removable when no longer required. The Defendants again try to distinguish the results of the two inventions by focusing on the possible configurations of the table pads. In light of the substantially similar functions and

26

substantially similar means for achieving those functions, this is a distinction without a relevant difference. This is particularly so since the '577 patent itself provides for the possibility of variety of configurations: "[I]t is to be realized that the optimum dimensional relationships for the parts of the invention, to include variations in size, materials, shape, form, function and manner of operation, assembly and use . . . ." ('577 Patent at 7–8, DE 48-2.) The Court therefore finds that the two inventions achieve substantially similar results, and, the Plaintiffs having established all three elements of the "triple identity" test of the doctrine of equivalents, the Court finds that the Defendants' second table top design infringes upon the Plaintiffs' '577 patent under the doctrine of equivalents.

This Court's infringement discussion, like that of the parties', often speaks of a comparison between the inventions as a whole.  The analysis technically is a claim-by-claim comparison. In this case, however, the entire dispute, and the resulting analysis, revolves around the parties' disagreement over the meaning of the terms in claim 1 of the '577 patent. As the parties' briefs reflect, once "magnetically-receptive" is defined, it is simpler to speak in terms of the inventions as a whole. For the sake of accuracy, however, the Court specifically finds that the design described in the '116 patent meets each claim limitation of the '577 patent, both literally and through the doctrine of equivalents. More generally, both patents disclose a system of table pads that utilizes magnetism to removably couple table pads together through the use of magnetically-active and magnetically-receptive structures.

**E.       Validity of Defendants' '116 Patent**

Patents are presumed to be valid, and each claim of a patent is presumed valid

27

independently of the validity of the other claims. 35 U.S.C. § 282. To overcome this presumption

of validity, the "burden is on the party asserting invalidity to prove it with facts supported by

clear and convincing evidence." *Adenta GmbH v. OrthoARM, Inc.*, 510 F.3d 1364, 1371 (Fed.

Cir. 2007) (quoting *SSIH Equip. S.A. v. U.S. Int'l Trade Commc'n*, 718 F.2d 365, 375 (Fed. Cir.

1983)). "That standard of proof also applies in the summary judgment context." *Invitrogen Corp.*

*v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1378 (Fed. Cir. 2005) (citing *Nat'l Presto Indus., Inc. v.*

*W. Bend Co.*, 76 F.3d 1185, 1189 (Fed. Cir. 1996)).

     35 U.S.C. § 102(b) provides that a patent will be invalid if "the invention was patented or

described in a printed publication in this or a foreign country or in public use or on sale in this

country, more than one year prior to the date of the application for patent in the United States."

"A claim is anticipated under 35 U.S.C. § 102 'if each and every limitation is found either

expressly or inherently in a single prior art reference.'" *IPXL Holdings, L.L.C. v. Amazon.com,*

*Inc.*, 430 F.3d 1377, 1381 (quoting *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d

1368, 1373 (Fed. Cir. 2001)).While patents are presumed valid, "a patent may be found to be

anticipated on the basis of a reference that had properly been before the patent examiner in the

United States Patent and Trademark Office ('PTO') at the time of issuance." *Id.* (citing *Prima*

*Tek II, L.L.C. v. Polypap, S.A.R.L.*, 412 F.3d 1284, 1287 (Fed. Cir. 2005). Anticipation is a

question of fact, *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1303

(Fed. Cir. 2003) (citing *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1281

(Fed. Cir. 2000), and the Court must of course construe all facts in a light most favorable to the

Defendants and draw all legitimate inferences and resolve all doubts in favor of the Defendants.

     The Plaintiffs have presented clear and convincing evidence establishing that the

Defendants' second table pad design, which is reflected in the '116 patent, was anticipated by the '577 patent. There is no dispute that the '577 patent preceded the '116 patent by more than one year. There really does not seem to be any dispute that given the Plaintiffs' definition of magnetically-receptive structure, the '116 patent is anticipated. The only question, as it relates to anticipation, is whether that definition is appropriate. The Court has concluded that the Plaintiffs' definition is appropriate, as explained in the claim construction portion of this opinion, and the '116 patent is therefore anticipated by the '577 patent.

The '116 patent describes a table pad system that is held together with magnetically active and magnetically receptive structures, as this Court has defined those terms. The Defendants do not dispute that the '116 patent describes a magnetically active structure. Because the table pad must also contain a substance that is couplable to the magnetically active structure, the '116 patent also describes a magnetically-receptive structure. This system is anticipated by the '577 patent.

The examining attorney himself reached this conclusion at one point when he rejected claims 1, 2, 4–6, 12–14, and 16–18 in the Defendants' patent application as being anticipated by the '577 patent. The amended patent application did not remedy this defect. The anticipated claims were simply reinserted into the remaining claims. While the examining attorney eventually determined that '116 was not anticipated by the '577, the conclusion was based on an erroneous construction of claim 1 in the '577 patent as including only a coupling with a single magnet.

The '577 patent discloses a table pad system whereby one pad is held together by a material that has a magnetic field coupled with a material that is attracted to that field. The '116

29

patent discloses the same. The '577 patent being issued more than one year prior to the '116 patent, the claims of '116 patent are anticipated by the '577 claims, and the '116 patent is therefore invalid.

### F.     Jurisdiction

On March 15, 2007, the Court directed the parties to brief the issue of whether the Court has subject matter jurisdiction over the declaratory judgment claim under 28 U.S.C. § 2201. Section 2201 provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

"A party seeking to base jurisdiction on the Declaratory Judgment Act bears the burden of proving that the facts alleged, 'under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1343 (Fed. Cir. 2007) (citing *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 771 (2007).[2] The dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests," "real and substantial," and "admit of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law

---

[2] In the Court's March 15, 2007, order directing the parties to brief the issue of jurisdiction, the Court indicated that it would determine its jurisdiction through the two-part test of *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 855 (Fed. Cir. 1999). While *Amana* has not been expressly overruled, the Court recognizes that the "reasonable apprehension of imminent suit" test is no longer appropriate in light of *MedImmune*, 127 S. Ct. at 771. The Court will therefore analyze its jurisdiction through the prisms of *Benitec*, 495 F.3d at 1343, and *MedImmune*, 127 S. Ct. at 771.

would be upon a hypothetical state of facts." *MedImmune*, 127 S. Ct. at 771. "A useful question

to ask in determining whether an actual controversy exists is what, if any, cause of action the

declaratory judgment defendant may have against the declaratory judgment plaintiff[.]" *Benitec*,

495 F.3d at 1344. "Without an underlying legal cause of action, any adverse economic interest

that the declaratory plaintiff may have against the declaratory defendant is not a legally

cognizable interest sufficient to confer declaratory judgment jurisdiction." *Id.* (quoting

*Microchip Tech. Inc. v. Chamberlain Group, Inc.*, 441 F.3d 936, 943 (Fed. Cir. 2006)).

The Plaintiffs asserts 35 U.S.C. § 291 as the substantial controversy affecting the parties'

adverse legal interests. That provision provides that "[t]he owner of an interfering patent may

have relief against the owner of another by civil action, and the court may adjudge the question

of the validity of any of the interfering patents, in whole or in part." 35 U.S.C. § 291.[3] The

existence of an interference-in-fact is therefore a jurisdictional requirement. *Medichem, S.A. v.*

*Rolabo, S.L.*, 437 F.3d 1157, 1161 (Fed. Cir. 2006).

To determine whether an interference exists, the Court must determine whether the '577

patent and the '116 patent "have the same or substantially the same subject matter in similar

form as that required by the PTO pursuant to 35 U.S.C. § 135." *Medichem*, 437 F.3d at 1161

(Fed. Cir. 2006) (quotation marks omitted). This determination is made through a two-way test

---

[3] The Defendants argue that the Court's jurisdiction cannot be based on a claim for interference because the claim was not "specifically raised." (Supp. Mem. of Defs. in Opp. to Mot. for Summ. J. at 2, DE 96). The Federal Rules of Civil Procedure only require notice pleading, which means a plaintiff's claim takes the form of "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "[T]he complaint need not identify a legal theory, and specifying an incorrect theory is not fatal." *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992). "[T]he correlation of facts to theory come[s] later in the process." *Int'l Mktg., Ltd. v. Archer-Daniels-Midland Co., Inc.*, 192 F.3d 724, 733 (7th Cir. 1999). The complaint makes sufficient allegations to support an interference theory. The Plaintiffs are correct that the pleadings and briefs together clearly establish that the Plaintiffs have been arguing all along that the two patents describe the same invention and are thus interfering patents.

"which states that two patents interfere only if (1) invention *A* either anticipates or renders obvious invention *B*, where Party *A*'s claimed invention is presumed to be prior art vis-à-vis Party *B* and (2) vice versa." *Id.* (citing *Eli Lilly & Co. v. Bd. of Regents of the Univ. of Wash.*, 334 F.3d 1264, 1268 (Fed. Cir. 2003)).

As for the first prong of the test, the Plaintiffs have established that the '577 Patent anticipates the '116 Patent. The motions for partial summary judgment only address the Defendants' second tabletop design, which is incorporated into the '116 patent. Accordingly, the analysis on the claim that the second design infringes on the '577 patent is the same as the analysis for determining whether the '577 patent anticipates the '116 patent. Because the Court finds that the second design does infringe on the '577 patent, as discussed more thoroughly *supra*, the Court also finds that the '577 patent does anticipate the '116 patent.

The Plaintiffs have also established that the '116 patent anticipates or renders obvious the '577 patent if the '116 patent it is presumed to be prior art to the '577 patent. The Defendants do not seem to argue that if the '116 patent is presumed to be prior art to the '577 patent, it would not anticipate or render obvious the '577 patent. To do so would contradict the Defendants' primary argument throughout this litigation — that their invention is an improvement upon the invention claimed in the '577 patent. The Defendants argue that their table pad design uses magnetism in a manner similar to the '577 patent but that it allows for more flexibility in the alignment of those pads. Accepting the Defendants' argument *arguendo*, this would clearly render the '577 patent, which utilizes magnetism to hold table pads together, obvious.

The Court finds that it has jurisdiction over this case under 28 U.S.C. § 2201 because the '116 patent interferes with the '577 patent. Because the '116 patent interferes with the '577

patent, the Court finds that the '116 patent is invalid.

### G.       Motion to Amend

On May 11, 2007, the Plaintiffs moved for leave to file a second amended complaint for

patent infringement, damages, and a declaration of invalidity (DE 90). The purpose of the

amended complaint is primarily to add the same claims from the first amended complaint against

the '693 patent, which was issued to the Defendants on March 28, 2006, as well as to specifically

identify 35 U.S.C. § 291 as a basis for the Court's subject matter jurisdiction.

The Defendants filed their brief in opposition to the motion on May 29, 2007 (DE 92).

The Defendants first argue that the motion is untimely. They argue that amendment to assert

interference could have been sought prior to the October 17, 2005, deadline for amending the

complaint and that the '693 patent was issued more than one year ago. Second, the Defendants

believe that amending the complaint to allege interference contradicts the Plaintiffs' prior

assertion that a proper claim for interference as basis for jurisdiction had previously been pled.

Rule 15(a) provides that leave to amend a complaint shall be freely given "when justice

so requires." Fed. R. Civ. P. 15(a). "A party is free to move for leave to amend, even after a

motion for summary judgment has been made by the opposing party, and the ordinary standards

of [Rule 15(a)] apply to the court's determination whether to allow amendment . . . ." *Verhein v.

South Bend Lathe, Inc.*, 598 F.2d 1061, 1063 (7th Cir. 1979).  "Courts are to use their discretion

under Rule 15(a) to liberally grant permission to amend pleadings . . . ." *Sides v. City of

Champaign*, 496 F.3d 820, 825 (7th Cir. 2007). "Reasons for finding that leave should not be

granted include 'undue delay, bad faith or dilatory motive on the part of the movant, repeated

failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Airborne Beepers & Videos, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 666 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Considering the factors relevant to a Rule 15(a) analysis, the Court finds that it is appropriate to allow the Plaintiffs to amend their complaint. While the first amended complaint adequately alleges an interference claim, there is no harm in amending the complaint at this point to ensure that there are no jurisdictional defects. The Defendants are correct that this amendment could have been made prior to the Court's original deadline for amending the complaint, but the Defendants have not demonstrated that the Plaintiffs' request is made in bad faith or as a result of a dilatory motive. The Defendants also do not show how they will suffer any prejudice from the Court granting this motion. The Defendants' argument that the motion to amend should be denied because the Plaintiffs previously argued that the first amended complaint sufficiently alleged interference is beside the point. Amending the complaint will not create jurisdiction in this Court for the first time. It is merely a request born of an abundance of caution to ensure that there are no jurisdictional defects.

Both sides agree that the Plaintiffs could not have amended the complaint to include claims for the '693 patent prior to the deadline for amending the pleadings. The Defendants are correct that the Plaintiffs could have acted with more haste in adding the '693 patent to the complaint. But again, the Defendants have not demonstrated that this lapse in time was due to bad faith or a dilatory motive. More importantly, the Defendants fail to explain how it would be more fair and/or efficient for the claims pertaining to the '693 patent to be pursued in a separate

34

lawsuit. Granting the motion does not change a trial date or otherwise unnecessarily delay the litigation. Accordingly, the Court will grant the Plaintiffs' motion to file a second amended complaint.

### H.     Conclusion

For the reasons stated in this opinion, the Court finds that the term "magnetically-active structure" is properly defined as any material from which magnetic forces emanate, and the Court finds that a structure is "magnetically-receptive" if it is attracted to the magnetic field of the magnetically-active structure on the adjacent table pad, and is magnetically couplable to it, so that the table pads are held in place. The Court finds as a matter of law that the Defendants' second table pad design infringes upon the '577 patent, both literally and under the doctrine of equivalents. The Court also finds that the '116 patent is invalid, as it is anticipated by the '577 patent.

### ORDER

The Defendants' Motion for Partial Summary Judgment [DE 48] is DENIED, the Plaintiffs' Cross-Motion for Partial Summary Judgment [DE 63] is GRANTED, and the Plaintiffs' Motion for Leave to File Second Amended Complaint [DE 90] is GRANTED.

The Court now sets this matter for a telephonic status conference on February 5, 2008, at 11:30 a.m. The Court will initiate the call.

SO ORDERED on January 11, 2008.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT